**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert I. Grim,<br><br>                     Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                     Defendant. | No. CV-14-01744-PHX-NVW<br><br>**ORDER** |

Plaintiff Robert I. Grim seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated, and the matter remanded for computation of benefits.

**I.    BACKGROUND**

Plaintiff was 42 years old on his disability onset date, has an associate's degree in psychology, and performed skilled work as an automobile mechanic and dental laboratory technician. His disability is based primarily on multiple mental impairments, including Asperger syndrome and attention deficit disorder. He has a history of hitting himself in the head with a hammer and banging his head against a pole. Plaintiff testified that he has difficulty concentrating and completing tasks if other people are around. He

further testified that he has difficulty interpreting interpersonal communications, which often results in misunderstandings and conflicts. He experiences symptoms of depression and anxiety, including sleeping too much or too little. He testified that he has suicidal thoughts at least every other week, if not more frequently, and he has been hospitalized multiple times for attempting suicide. He is classified as Seriously Mentally Ill under the Maricopa County mental health care system.

On June 21, 2011, Plaintiff applied for disability insurance benefits alleging disability beginning December 23, 2010. On March 25, 2013, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On May 24, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On August 5, 2014, Plaintiff sought review by this Court.

**II.    STANDARD OF REVIEW**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence

is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**III.     FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011, and that he did not engage in substantial gainful activity during the period from his alleged onset date of December 23, 2010, through his date last insured of December 31, 2011. At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments:

bipolar disorder, depression, a personality disorder, attention deficit hyperactivity disorder, Asperger syndrome, asthma, and chronic obstructive pulmonary disorder. At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can frequently climb ramps, stairs and ladders. He can never climb ropes or scaffolds. He should avoid concentrated exposure to pulmonary irritants, such as odors, fumes, dusts and gases. He also should avoid hazardous environments. He is limited to work which involves only occasional changes in the work setting, occasional interaction with the public and co-workers and occasional supervision.

The ALJ further found that, through the date last insured, Plaintiff was capable of performing past relevant work as a dental laboratory technician, which is defined as skilled, light work in the *Dictionary of Occupational Titles*.

## IV.   ANALYSIS

### A.   The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "This is not an easy requirement to meet:  'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "General findings are insufficient." *Id.* The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* An ALJ may consider whether the claimant has adequately explained failure to seek treatment or follow a prescribed course of treatment. *Rounds v. Comm'r Soc. Sec. Admin.*, __ F.3d __, 2015 WL 4620150, at * 7 (9th Cir. Aug. 4, 2015). Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible because (1) the objective medical evidence does not support the degree of severity alleged by Plaintiff, (2) he obtained an associate's degree from Arizona State University and was a full-time student at Phoenix College in January 2011, (3) he failed to appear for numerous appointments, (4) he maintained a long-term relationship with a woman that recently ended, and (5) he reported daily activities that are not as limited as the ALJ would expect if Plaintiff had the limitations he claims.

The ALJ did not identify the testimony he found not to be credible and did not explain how the evidence undermines Plaintiff's testimony. *See Treichler*, 775 F.3d at 1102. The ALJ said Plaintiff testified he has trouble sleeping because of his anxiety, has trouble making and keeping friends, gets into conflicts easily, is extremely defensive, feels people are conspiring against him, has suicidal thoughts every other week, has had multiple suicide attempts, and bangs his head against objects when he gets irritated. The ALJ also said, "The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," but never identified what "the complaints of disabling symptoms and limitations" are that are contradicted by Plaintiff's daily activities. Although the ALJ found that Plaintiff had multiple mental impairments, the ALJ stated that Plaintiff's "condition responded well to treatment" without identifying what "condition" responded well to treatment. Even if general findings were sufficient, which they are not, the ALJ's reasons for finding Plaintiff less than fully credible do not satisfy the clear and convincing standard.

Therefore, the ALJ's credibility findings are not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *See Tommasetti*, 533 F.3d at 1039.

### B. The ALJ Erred in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and

legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the

treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c).

### 2. The ALJ's Weighing of Medical Source Opinions

The ALJ said he was unable to assign any significant weight to the opinions of the examining physicians Dr. Marc Walter, Dr. Aaron Bowen, and Dr. Mark Wellek, or to the opinion of treating psychiatrist Dr. Laura Don regarding Plaintiff's mental impairments. The ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record for rejecting any of these medical opinions.

The ALJ stated that he was unable to assign the opinion of consultative examiner Dr. Marc Walter any significant weight because although Plaintiff's psychiatric impairments are severe, they responded well to treatment, so they do not render Plaintiff incapable of working. The ALJ did not say which impairments responded well to treatment and did not give a specific reason for rejecting Dr. Walter's opinion. Dr. Walter's testing of Plaintiff showed he most likely has Asperger syndrome, bipolar disorder, and attention deficit hyperactivity disorder. Dr. Walter observed that Plaintiff "has very much difficulty with social functioning," including interpreting nonverbal cues. Dr. Walter concluded Plaintiff has several serious mental disorders, each of which would markedly interfere with his ability to maintain work.

The ALJ stated that he was unable to assign the opinion of consultative examiner Dr. Aaron Bowen any significant weight because the objective medical evidence indicates that Plaintiff's psychiatric impairments are severe. Dr. Bowen opined that he saw no evidence of any of the diagnoses Plaintiff claims to have and that the best-supported diagnosis is borderline personality disorder. Dr. Bowen noted:

> He was irritable during the interview and kept making snide comments about the questions and smirking as he responded. He was very vague and evasive with his answers. He was very theatrical and kept sighing, exaggerating everything that came out of his mouth, and talking about how he can't do anything. . . . Overall, he is not a credible source.

1   Dr. Bowen also commented that during the Mini Mental Status Exam, "the claimant put
2   forth very little effort and kept sighing and moaning—frankly, this is the one of the worst
3   efforts I have seen."  Yet, all of Plaintiff's responses on the Mini Mental Status Exam
4   appear to be correct, and sighing may have been a sincere, but inappropriate, reaction to
5   the extremely simple questions and tasks, such as repeating three words.  Dr. Bowen also
6   commented:  "He was clearly exaggerating and this writer has no doubt that he is just
7   throwing out a list of conditions without really knowing what he is saying (he doesn't
8   have learning disabilities, dyslexia, Asperger's, ADHD, bipolar, depression, anxiety, or
9   any of the other diagnoses he says he has)."  Dr. Bowen's interaction with Plaintiff
10  illustrates Plaintiff's difficulty with interpersonal communications and how negatively
11  others react to it.

12  The ALJ stated that he was unable to assign the opinion of consultative examiner
13  Dr. Mark Wellek any significant weight because Dr. Wellek saw Plaintiff only one time,
14  and Dr. Wellek's statement that Plaintiff's condition did not respond well to Prozac,
15  carbamazepine, and trazodone was contradicted by three treatment notes (two on the
16  same day, one of which was for three minutes).  But the treatment notes make no
17  reference to medications; they merely state that Plaintiff said he was "doing better" and
18  was "much less depressed than he was."  Dr. Wellek found that Plaintiff exhibited the
19  classic signs and symptoms of Autism Spectrum Disorder and suggested medications
20  more likely to be effective for the anxiety and agitation of autism and for depression.
21  The ALJ did not acknowledge the difference between autism and depression.

22  The ALJ stated that he was unable to assign either of the opinions of treating
23  psychiatrist Dr. Laura Don any significant weight because the objective medical evidence
24  does not support these opinions.  The ALJ identified two examples of contradictions
25  between Plaintiff's reported activities of daily living and Dr. Don's opinion.  First, in July
26  2011 Dr. Don opined that Plaintiff has "marked difficulty leaving the house or allowing
27  people into his home due to panic and paranoid delusions."  In September 2011 Plaintiff
28  reported that he goes outside daily, but he also reported that he spends as little time as

possible in stores because people scare him, he does not go places on a regular basis, he mostly keeps to himself, and he avoids people as much as possible. In March 2013 Plaintiff testified that in 2012 he flew to San Diego to visit his mother for four or five days. Second, in March 2013 Dr. Don opined that Plaintiff "suffers from moderate to moderately severe fatigue as a result of his medications," but Plaintiff "did not similarly report significant fatigue while undergoing treatment." However, in March 2013 Plaintiff testified that medications interfere with his sleep patterns, sometimes preventing him from falling asleep at night, which results in him sleeping during the day. Even if Dr. Don incorrectly identified fatigue as a side effect of Plaintiff's medications (and sedation as a side effect of Seroquel), the ALJ did not give any reason to reject Dr. Don's opinions that Plaintiff has severe impairments in his ability to relate to other people, respond appropriately to supervision and customary work pressures, and perform complex or varied tasks and has moderately severe impairments in his ability to understand, carry out, and remember instructions and to respond appropriately to co-workers.

Instead, the ALJ gave significant weight to the opinions of two psychologists employed by the State Disability Determination Services who neither treated nor examined Plaintiff, but concluded that Plaintiff was not disabled based on reviewing records. Both reviewing psychologists gave great weight to medical opinions from 2008 (at least two years before the alleged onset date), from Dr. Ottney regarding physical (not mental) impairments, and from Dr. Bowen, whose opinion the ALJ rejected. They rejected Dr. Don's July 2011 opinion because it relied heavily on Plaintiff's subjective report of symptoms and limitations. The ALJ provided only the following conclusory explanation for giving the reviewing opinions significant weight:

> Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve significant weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

- 10 -

However, the other reasons to reach similar conclusions are not "explained throughout this decision." Moreover, the ALJ erred by giving significant weight to the opinions of non-treating or non-examining psychologists without showing they were consistent with independent clinical findings or other evidence in the record.

### C. The ALJ Erred in Determining Plaintiff's Residual Functional Capacity.

A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect his ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of all symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). A plaintiff's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995).

The ALJ found that Plaintiff had severe impairments that include, among other things, attention deficit hyperactivity disorder and Asperger syndrome. He rejected all of the medical opinions that supported finding any severe impairment, so it is impossible to know what evidence he used to support his severe impairment findings. However, in his step three analysis, the ALJ found that Plaintiff had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace. In his residual functional capacity assessment, the ALJ included limitations related to social functioning and did not include any limitation related to concentration, persistence, or pace. This error was not harmless because if the ALJ had included a limitation related to concentration, persistence, or pace in the hypothetical posed to the vocational expert, the expert would have testified that Plaintiff was not capable of performing his past

relevant work as a dental laboratory technician, which is defined as skilled, light work in the *Dictionary of Occupational Titles*.

### D. The ALJ Erred by Failing to Make Factual Findings to Support the Conclusion that Plaintiff Can Perform Past Relevant Work.

At step four, the claimant has the burden of showing she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ may conclude the claimant can perform past relevant work by finding he is able to perform the actual functional demands and duties of a particular past relevant job *or* he is able to perform the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Id.* at 845. Thus, at step four, the claimant has the burden to prove he cannot perform her prior relevant work either as actually performed or as generally performed in the national economy. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

Although the burden of proof rests with the claimant at step four, the ALJ must make specific factual findings regarding the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. *Pinto*, 249 F.3d at 845. The ALJ is required to make explicit findings regarding a claimant's past relevant work either as generally performed *or* as actually performed, but is not required to make findings about both. *Id.* at 845. The ALJ may assess a claimant's past relevant work as actually performed by considering a properly completed vocational expert's report and/or the claimant's own testimony. *Id.* The *Dictionary of Occupational Titles* usually is the best source for how a job is generally performed. *Pinto*, 249 F.3d at 845.

The ALJ did not make explicit factual findings regarding the physical and mental demands of Plaintiff's past relevant work either as actually performed or as generally performed. He said only that he relied on the vocational expert, who opined that an individual with Plaintiff's residual functional capacity would be capable of performing his past work as a dental laboratory technician.

### E.     Remand

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the district court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).  To remand for immediate award of benefits, the Court must find:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose.  The ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and for rejecting the medical opinions of Plaintiff's treating psychiatrist.  In addition, he failed to consider all of Plaintiff's severe impairments in his residual functional capacity assessment and failed to make factual findings regard the physical and mental demands of Plaintiff's past relevant work.

It is unnecessary to remand for further administrative proceedings for a step five determination of whether Plaintiff was capable of performing any other work.  The ALJ posed a second hypothetical to the vocational expert that included mental functional limitations consistent with the improperly discredited evidence, *i.e.*, Plaintiff's testimony

and the medical opinions of the treating and examining psychiatrists. The vocational expert opined that under the second hypothetical there would not be any work that Plaintiff could perform. Therefore, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is vacated and this case is remanded for computation and award of benefits. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 4th day of September, 2015.

_____
Neil V. Wake
United States District Judge